```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - -X
REGIONS BANK d/b/a REGIONS FUNDING,          :

            Plaintiff,                        :

         - against -                          :    01 Civ. 0116 (WCC)

WIEDER & MASTROIANNI, P.C. and PETER          :
MASTROIANNI,
                                              :
            Defendants.
- - - - - - - - - - - - - - - - - - - - - - -X
WIEDER & MASTROIANNI, P.C. and PETER          :
MASTROIANNI,
                                              :

         Third-Party Plaintiffs,              :         OPINION
                                                       AND ORDER
         - against -                          :

MORNING STAR MORTGAGE BANKERS, INC.,          :
ANGELA DAIDONE, and THE PROVIDENT BANK,
INC. d/b/a PROVIDENT CONSUMER FINANCIAL       :
SERVICES, INC.,
                                              :
         Third-Party Defendants.
- - - - - - - - - - - - - - - - - - - - - - -X
```

**A P P E A R A N C E S :**

                                                CERTILMAN BALIN ADLER & HYMAN, LLP
                                                **Attorneys for Plaintiff**
                                                90 Merrick Avenue, 9th Floor
                                                East Meadow, New York 11554

THOMAS J. McNAMARA, ESQ.
THOMAS A. BIZZARO, JR., ESQ.

       Of Counsel

                                                STEINBERG & CAVALIERE, LLP
                                                **Attorneys for Defendants/Third-**
                                                  **Party Plaintiffs**
                                                50 Main Street
                                                White Plains, New York 10606

RONALD W. WEINER, ESQ.

       Of Counsel

**Copies Mailed to Counsel of Record _____**

**A P P E A R A N C E S :  (continued)**

```
                                        BUCHANAN INGERSOLL PC
                                        One Chase Manhattan Plaza
                                        New York, New York  10005

WILLIAM M. O'CONNOR, ESQ.
EVELYN H. SEELER, ESQ.
                                                   - and -
        Of Counsel


                                        KEATING, MUETHING & KLEKAMP, P.L.L.
                                        1400 Provident Tower
                                        One East Fourth Street
                                        Cincinnati, Ohio 45202


JAMES E. BURKE, ESQ.
```

       Of Counsel          **Attorneys for Third-Party Defendant The Provident Bank d/b/a Provident Consumer Financial Services, Inc.**

**Conner, Sr. D.J.:**

Plaintiff Regions Bank d/b/a Regions Funding ("Regions") brought suit against defendants Wieder & Mastroianni, P.C. ("W&M") and Peter Mastroianni for conversion, breach of fiduciary duty and other claims. W&M in turn brought a Third-Party Complaint against The Provident Bank, Inc. d/b/a Provident Consumer Financial Services, Inc. ("Provident"), Morning Star Mortgage Bankers, Inc. ("Morning Star"), and Angela Daidone ("Daidone"). In an earlier Opinion and Order, this Court granted defendants' motion for summary judgment as to plaintiff's claims and dismissed the action. *See Regions Bank v. Wieder & Mastroianni, P.C.*, 423 F. Supp. 2d 265 (S.D.N.Y. 2006) (Conner, J.) (*Regions Bank II*). Plaintiff then appealed to the Second Circuit, which remanded the case for clarification as to whether we applied New York law to plaintiff's conversion claim in our earlier decision and, if not, whether we reach the same result applying New York law. Although we cited the Eleventh Circuit's interpretation of Ohio law in our previous Opinion, we reach the same result under New York law, which the parties agree applies to this dispute.

## BACKGROUND

The facts of this case are set out at length in our two previous opinions, familiarity with which is presumed. *See id.*; *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436 (S.D.N.Y. 2001) (Conner, J.) (*Regions Bank I*). The following is a summary of those facts relevant to the issues at hand, as well as those that are helpful in providing context.

Morning Star was in the business of originating residential mortgage loans. *Regions Bank I*, 170 F. Supp. 2d at 437. To fund those loans, Morning Star maintained lines of credit with financial institutions known as "warehouse lenders." *Id.* After arranging a mortgage, Morning Star

1

would typically sell the note to another financial institution and use the proceeds of that sale to repay the warehouse lender. *Id.*

Regions is a warehouse lender. *Id.* On April 4, 2000, Regions and Morning Star entered into a Warehouse Security Agreement and warehouse line of credit, pursuant to which Regions would fund mortgage loans originated by Morning Star. *Id.* According to the agreement, Regions would transfer the money for the loans into the escrow account of Morning Star's settlement agent, W&M. *Id.* The funds transferred into W&M's account by Regions were to be used to fund previously specified underlying loans. *Id.*

This dispute arises out of a series of fraudulent banking transactions initiated by Morning Star. Between April 10 and 12, 2000, Regions transferred a total of $798,720 into W&M's escrow account, allegedly for the purpose of funding three separate mortgage loans. *Id.* Between April 10 and 12, 2001, Daidone, Morning Star's president and chief executive officer, contacted W&M and told the firm that there had been a mistake with each of those three loans. *Id.* at 438. Daidone falsely told W&M that Provident was the warehouse lender for the three loans, and instructed W&M to return the money by transferring it to a certain Provident account, which W&M did. *Id.* In fact, and allegedly unbeknownst to W&M, the Provident account that Morning Star instructed W&M to transfer the funds to was Morning Star's private account, not a Provident warehouse account. *Id.* Shortly after W&M transferred the funds to Morning Star's account, Regions informed W&M that Regions was the source of the funds. *Id.* W&M then asked Provident to wire the funds back to the escrow account, but Provident refused to do so. *Id.*

## DISCUSSION

**I.** <u>***Regions Bank II***</u>

*Regions Bank II* involved claims by plaintiff against defendants for conversion and breach of fiduciary duty. In our previous Opinion, we observed that W&M's mortgage-banking clients, such as Morning Star, would regularly have funds wire-transferred into W&M's escrow account, and that there would often be multiple transfers per day into the account on behalf of Morning Star and other clients. *Regions Bank II*, 423 F. Supp. 2d at 270. In evaluating plaintiff's conversion claim, we stated:

> As the Eleventh Circuit ruled in *Regions Bank*, 345 F.3d at 1277, there is no conversion unless the depositary knew or should have known that the deposited funds were being taken or withheld from their owner. Here W & M had no reason to know that the funds had come from Regions. When Morning Star instructed it to transfer them to its account at Provident, it was duty bound to comply. It did not knowingly convert funds belonging to Regions.

*Id.* at 269 (*citing Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1277 (11th Cir. 2003)). Our citation was to a case involving the same transactions and some of the same parties.[1] In that case, however, the Eleventh Circuit applied Ohio law in dismissing Region's conversion claim against Provident. The Second Circuit has now instructed us to explain whether we applied Ohio law in *Regions Bank II* and, if so, whether we reach the same result under New York law, which the parties agree governs this dispute. Although we took the Eleventh Circuit's reasoning into account in our previous Opinion, for the reasons discussed below, defendants are entitled to summary judgment as to Region's conversion claim against W&M and Mastroianni under New York law.

---

[1] W&M was not a party in the 11th Circuit action, apparently because the firm was not subject to personal jurisdiction in Georgia, where that lawsuit was brought.

## II. Analysis

"'Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'" *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53-54 (2d Cir. 1993) (quoting *Meese v. Miller*, 436 N.Y.S.2d 496, 500 (App. Div. 1981)). To maintain a claim for conversion, a plaintiff must show "legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's rights." *Ahles v. Aztec Enters., Inc.*, 502 N.Y.S.2d 821, 822 (App. Div. 1986). Wrongful intent on the part of the defendant, however, is not an element of conversion. *See Filner v. Shapiro*, 633 F.2d 139, 141-42 (2d Cir. 1980) (citing *Brown v. Garey*, 267 N.Y. 167, 170 (1935)); *Aeroglide Corp. v. Zeh*, 301 F.2d 420, 422 (2d Cir. 1962); *Boyce v. Brockway*, 31 N.Y. 490 (1865); *Leve v. C. Itoh & Co., (America), Inc.*, 523 N.Y.S.2d 512, 513 (App. Div. 1988). It is not a defense that the defendant mistakenly believed the property to be his own. *Newbro v. Freed,* 409 F. Supp. 2d 386, 396 (S.D.N.Y. 2006) (citing *Boyce*, 31 N.Y. at 492).

When a defendant's possession of the property was initially lawful, there is no conversion unless the defendant refuses the owner's demand to return the property or wrongfully transfers or disposes of it before a demand is made. *See MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.*, 193 N.Y. 92, 101 (1908). In *MacDonnell*, the New York Court of Appeals held:

> The rule that one who comes lawfully into possession of property cannot be charged with conversion thereof until after a demand and refusal . . . has no application in a case where the lawful custodian of property commits an overt and positive act of conversion by an unlawful sale or disposition of the same.

*Id.*; *see also Nat'l Steamship Co. v. Sheahan*, 122 N.Y. 461, 465 (1890) (affirming dismissal of

action for replevin of allegedly converted steamship tickets "because the defendant neither unlawfully obtained possession of the tickets nor wrongfully disposed of them"); *Gonzalez v. Port Auth. of N.Y. & N.J.*, 500 N.Y.S.2d 782, 783-84 (App. Div. 1986).

In the present case, W&M came into possession of the funds lawfully and transferred them to Provident before plaintiff demanded their return. The Court is not aware of any precedent directly on point.[2] However, a review of New York case law reveals certain principles that are instructive: although the general rule is that wrongfulness is not an element of conversion, a defendant who came into possession lawfully will be liable for transferring the property only if the transfer was in some way wrongful.[3] Therefore, the issue before the Court is whether a reasonable fact finder could conclude that W&M's transferring the funds to Provident was wrongful.[4]

---

[2] Plaintiff discusses *Newbro* at length. (*See* Pl. Mem. Opp. Summ. J. at 15-16.) There is some superficial similarity between that case and this one, in that *Newbro* involved a conversion claim based on a transfer of funds as well as fraudulent conduct by a third party. *See Newbro*, 409 F. Supp. 2d at 394. But there is also a very significant difference: in *Newbro*, the defendant, while still in possession, refused the plaintiff's rightful demand for the return of the funds. *See id.* at 397. Because the issue here is whether defendants are liable for conversion based on actions they took before plaintiff demanded the return of the money, *Newbro* is inapposite.

[3] In another exception to the general rule, courts have also used the concept of "wrongfulness" to maintain the distinction between the tort of conversion and a claim for breach of contract. *See, e.g.*, *Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (discussing the "well-settled principle that, 'to sustain a conversion claim, a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights.'") (quoting *Fraser v. Doubleday & Co.*, 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984)); *see also Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006)**.**

[4] There are cases in which some courts, including the Second Circuit, have implied in dicta that a person could be liable for conversion based on any transfer, not just a wrongful one. *See, e.g.*, *Schwartz*, 984 F.2d at 54 ("'Where the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property.'") (quoting *Johnson v. Gumer*, 464 N.Y.S.2d 318, 319 (App. Div. 1983)). *Schwartz*, however, did not involve a transfer by the defendant, and the court affirmed

5

Black's Law Dictionary defines "wrongful" as "Characterized by unfairness or injustice" or "Contrary to law; unlawful." BLACK'S LAW DICTIONARY 1644 (8th ed. 2004). In the conversion context, courts have found transfers to be wrongful where the transferor knew the transfer would violate the superior property rights of another, yet disposed of the property anyway, usually for personal gain. *MacDonnell* is one example. In *MacDonnell*, the Medina Gas Light Company allowed its secretary, Stranahan, to pledge bonds issued by Medina as security for a personal loan made by the defendant to Stranahan, despite the fact that the bonds were authorized for corporate purposes only. *See* 193 N.Y. at 94. The defendant later sold the bonds to the German-American Bank. *See id.* The defendant was initially in lawful possession of the bonds, despite Stranahan's wrongdoing and the defendant's knowledge of it. *See id.* at 102. But the Court of Appeals held the defendant's sale of the bonds was a "wrongful taking" that constituted conversion; the defendant became liable the moment it "did something to indicate that it proposed to ignore the owner's rights and assert its own claim in hostility thereto." *See id.* at 101-102.

The Appellate Division, Third Department, affirmed a judgment of conversion in *Key Bank of New York v. Grossi*, 642 N.Y.S.2d 403 (App. Div. 1996). The defendants were officers of a corporation that auctioned off property seized by the plaintiff, remitting the proceeds of the sales to the plaintiff. *Id.* at 404. The defendants' business experienced financial difficulty and was left with insufficient funds to pay its creditors. *Id.* After selling three vehicles and a boat seized by the plaintiff, the defendants used the proceeds to pay their company debts, and refused to pay the

---

the dismissal of the plaintiff's conversion claims because the defendant came into possession lawfully and the plaintiff never demanded that the property be returned. *See id.* Plaintiff has not cited any case, and we are not aware of one, in which a defendant lawfully in possession of another's property was held liable for conversion based on a transfer that was not in some way wrongful or illegal.

plaintiff the amounts due to it as the proceeds of the sales. *Id.* The court held the defendants liable for conversion because, although their initial possession of the funds at issue was lawful, the defendants' use of the money to pay their company's creditors was an act hostile to the plaintiff's rights, constituting conversion. *Id.* at 405.

On the other hand, courts have declined to impose liability where the defendant came into possession lawfully and then disposed of the property in a manner that was not wrongful. In *Gonzalez*, the plaintiff was arrested by officers of the Port Authority of New York and New Jersey Police Department. *Gonzalez*, 500 N.Y.S.2d at 783. The officers seized various personal items the plaintiff had on his person, including approximately $25,000 in cash. *Id.* The officers then transferred those items to the Property Clerk of the City of New York for Queens County. *Id.* The plaintiff brought an action against the Port Authority for conversion and replevin. *Id.* The Appellate Division, Second Department, reversed the trial court's grant of summary judgment in favor of the plaintiff. *Id.* The court held:

> Under the circumstances of this case, an action sounding in replevin and conversion cannot lie against the [defendant]. Where a defendant lawfully obtains possession of property and has not wrongfully disposed of it, the action is not maintainable unless the defendant had possession of the property at the commencement of the action.

*Id.*; *see also Wembach Corp. v. Emigrant Indus. Sav. Bank*, 34 N.Y.S.2d 688, 692 (App. Div. 1942) ("A demand on one not in possession of property does not make the failure to deliver to the true owner conversion, in the absence of any wrongful exercise of dominion by the one on whom the demand was made.")

*Sheahan* involved a principal-agent-sub-agent system for the distribution of steamboat tickets. *See Sheahan*, 122 N.Y. at 461. The plaintiff and the defendant agreed that the defendant

would sell the plaintiff's tickets through a network of sub-agents with whom the defendant would contract. *Id.* The plaintiff later terminated the defendant's agency, and the defendant attempted, with only limited success, to recover for the plaintiff the tickets the defendant had distributed to the sub-agents. *Id.* The plaintiff brought an action in replevin. *Id.* The Court of Appeals affirmed a ruling in favor of the defendant, holding that the defendant's inability to deliver the remaining tickets to plaintiff "could hardly be treated as a conversion or wrongful detention." *Id.* at 464. The defendant's initial possession of the tickets was lawful, and his distribution of them to the sub-agents was neither wrongful nor unlawful. *Id.* at 465.

The cases cited above are factually different from each other and from the case at bar. But taken together, they stand for the principle that one who comes into possession of property lawfully and then disposes of it will not be liable for conversion unless that disposal was in some way wrongful. *See, e.g.*, *MacDonnell*, 193 N.Y. at 101. Plaintiff has not cited any case, and we are not aware of one, in which a court applying New York law has held otherwise. Although wrongful intent or knowledge of another person's superior property right are not prima facie elements of a conversion claim, cases affirming liability based on the defendant's transfer of property have involved conduct by the defendant that was wrongful, unlawful, selfishly motivated, or known by the defendant to be in violation of another's rights. *See, e.g.*, *id.*; *Key Bank of N.Y.*, 642 N.Y.S.2d 403. Where the transfer was not wrongful, courts have not imposed liability. *See, e.g.*, *Sheahan*, 122 N.Y. 461; *Gonzalez*, 500 N.Y.S.2d 782.

Here, there is no question that the money at issue came into W&M's possession lawfully. Plaintiff transferred the funds to W&M at the direction of Morning Star, who had caused them to be deposited in W&M's escrow account. (Holland Aff. ¶¶ 3-5.) W&M did not learn that plaintiff was

8

the source of the funds until after W&M had transferred them to Provident on Morning Star's instructions. (Mastroianni Aff. ¶¶ 11-18.) And although plaintiff argues that it was careless of W&M not to verify the source of the funds before wiring them to Provident (*see* Pl. Mem. Opp. Summ. J. at 10-11), there is no reason to believe that defendants wrongfully intended to deprive plaintiff of its right to the funds. They did not seek to confer an improper benefit on themselves or anyone else, nor to improperly deprive another person of what was rightfully his. *See Key Bank of N.Y.*, 642 N.Y.S.2d at 404. Defendants were deceived by Morning Star's and Daidone's lies, but their transfer of the funds to Provident was not wrongful, and it was not conversion.

Simply put, plaintiff made a bad loan. It advanced money to finance residential mortgage loans, expecting to be repaid when the mortgages were sold, but the crooked borrowers misapplied the funds to pay off some of their other debt. Because the borrowers are apparently judgment proof, plaintiff seeks indemnification from defendants, in whose escrow account the funds were briefly lodged. But there is no basis in law or in equity for shifting plaintiff's loss to defendants, who did not know the source of the funds and merely transferred them in accordance with the instructions of their apparent owner, with no reason to suspect the propriety of those instructions.

## CONCLUSION

For all of the foregoing reasons, the motion of defendants Wieder & Mastroianni, P.C. and Peter Mastroianni for summary judgment is granted, the motion of plaintiff Regions Bank d/b/a Regions Funding for partial summary judgment as to the conversion claim is denied, and the motion of The Provident Bank, Inc. d/b/a Provident Consumer Financial Services, Inc. to dismiss, without

prejudice, the Third-Party Complaint is granted. The claims against third-party defendants Morning Star Mortgage Bankers, Inc. and Angela Daidone are dismissed as moot.

SO ORDERED.
Dated: White Plains, New York
November 26, 2007

*William C. Conner*
Sr. United States District Judge